UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRAIG FISHWICK,<br><br>                           Plaintiff,<br><br>       -against-<br><br>TRILLIUM THERAPEUTICS INC., LUKE BESHAR, SCOTT MYERS, HELEN TAYTON-MARTIN, MICHAEL KAMARCK, PAOLO PUCCI, PAUL WALKER, CATHERINE MACKEY, and JAN SKVARKA,<br><br>                           Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Craig Fishwick ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Trillium Therapeutics Inc. ("Trillium" or the "Company") and the members of Trillium's board of directors (the "Board" or the "Individual Defendants" and together with Trillium, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of Trillium by Pfizer Inc. ("Pfizer") and PF Argentum Acquisition ULC ("PF Argentum"), a wholly-owned, indirect subsidiary of Pfizer (the "Proposed Acquisition").

2. On August 20, 2021, the parties entered into an Arrangement Agreement (the "Arrangement Agreement"), pursuant to which PF Argentum will acquire the outstanding shares of Trillium not already owned by Pfizer for $18.50 per share in cash (the "Acquisition

1

Consideration").

3. On September 27, 2021, in order to solicit Trillium shareholders to vote in favor of the Proposed Acquisition, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement on Schedule DEFM14A (the "Proxy").

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Trillium, and (ii) the valuation analyses performed by Trillium's financial advisor, Centerview Partners LLC ("Centerview").

5. The special meeting of Trillium shareholders to vote on the Proposed Acquisition is scheduled for October 26, 2021 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Acquisition and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Acquisition until the material information discussed herein is disclosed to Trillium's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Acquisition is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9.  Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Trillium's common stock trades on The Nasdaq Stock Market, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

10.  Plaintiff is, and at all relevant times has been, a shareholder of Trillium.

11.  Defendant Trillium is a corporation organized under the laws of British Columbia, Canada with its principal executive offices located at 100 Cambridge Park Drive, Suite 510, Cambridge, Massachusetts 02140. Trillium's common stock trades on The Nasdaq Stock Market under the ticker symbol "TRIL."

12.  Individual Defendant Luke Beshar is, and has been at all relevant times, a director of Trillium.

13.  Individual Defendant Scott Myers is, and has been at all relevant times, a director

of Trillium.

14. Individual Defendant Helen Tayton-Martin is, and has been at all relevant times, a director of Trillium.

15. Individual Defendant Michael Kamarck is, and has been at all relevant times, a director of Trillium.

16. Individual Defendant Paolo Pucci is, and has been at all relevant times, a director of Trillium.

17. Individual Defendant Paul Walker is, and has been at all relevant times, a director of Trillium.

18. Individual Defendant Catherine Mackey is, and has been at all relevant times, a director of Trillium.

19. Individual Defendant Jan Skvarka is, and has been at all relevant times, a director of Trillium and its President and Chief Executive Officer.

20. The Individual Defendants referred to in ¶¶ 12-19 are collectively referred to herein as the "Individual Defendants" and with Trillium they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I.   **Background and the Proposed Acquisition**

21. Trillium is an immune-oncology company developing innovative therapies for the treatment of cancer. The Company's two clinical programs, TTI-621 and TTI-622, target CD47, "don't eat me" signal that cancer cells frequently use to evade the immune system.

22. Pfizer is a research-based, global biopharmaceutical company. Pfizer's principal executive offices are located at 235 East 42nd Street, New York, New York 10017.

23. On August 23, 2021, Trillium and Pfizer issued a joint press release announcing

the Proposed Acquisition, which states in relevant part:

**Pfizer to Acquire Trillium Therapeutics Inc.**

*Proposed acquisition strengthens Pfizer's category leadership in Oncology with addition of next-generation, investigational immune-therapeutics for hematological malignancies*

*Expands innovative pipeline, potentially enhancing growth in 2026-2030 and beyond*

*Pfizer to host analyst and investor call at 10:00 a.m. ET today with Pfizer Oncology executives*

NEW YORK and CAMBRIDGE, Mass., Aug. 23, 2021 (GLOBE NEWSWIRE) -- Pfizer Inc. (NYSE: PFE) and Trillium Therapeutics Inc. (NASDAQ/TSX: TRIL) today announced that the companies have entered into a definitive agreement under which Pfizer will acquire Trillium, a clinical stage immuno-oncology company developing innovative therapies for the treatment of cancer. Under the terms of the agreement, Pfizer will acquire all outstanding shares of Trillium not already owned by Pfizer for an implied equity value of $2.26 billion, or $18.50 per share, in cash. This represents a 118% premium to the 60-day weighted average price for Trillium.

Trillium's portfolio includes biologics that are designed to enhance the ability of patients' innate immune system to detect and destroy cancer cells. Its two lead molecules, TTI-622 and TTI-621, block the signal-regulatory protein α (SIRPα)–CD47 axis, which is emerging as a key immune checkpoint in hematological malignancies. TTI-622 and TTI-621 are novel, potentially best-in-class SIRPα-Fc fusion proteins that are currently in Phase 1b/2 development across several indications, with a focus on hematological malignancies.

"Today's announcement reinforces our commitment to pursue scientific breakthroughs with the addition of potentially best-in-class molecules to our innovative pipeline," said Andy Schmeltz, Global President & General Manager, Pfizer Oncology. "The proposed acquisition of Trillium builds on our strong track record of leadership in Oncology, enhancing our hematology portfolio as we strive to improve outcomes for people living with blood cancers around the globe. Our deep experience in understanding the science of blood cancers, along with the diverse knowledge base we have developed across our growing hematology portfolio of eight approved and investigational therapies, provide us with a foundation to advance these important potential medicines to patients who need them."

Hematological malignancies are cancers that affect the blood, bone marrow, and lymph nodes. This classification includes various types of leukemia, multiple

myeloma, and lymphoma. More than 1 million people worldwide were diagnosed with a blood cancer in 2020, representing almost 6% of all cancer diagnoses globally. In 2020, more than 700,000 people worldwide died from a form of blood cancer.

"We're delighted to announce Pfizer's proposed acquisition of Trillium. Today's announcement reflects Trillium's potentially best in class SIRPα–CD47 status and contribution to immuno-oncology," said Dr. Jan Skvarka, Chief Executive Officer of Trillium. "Trillium has the only known SIRPα–CD47 targeting molecules with clinically meaningful monotherapy responses as well as a strong basis for combination therapies, which is supported by preclinical evidence with a diverse set of therapeutic agents. With Pfizer's global reach and deep capabilities, we believe our programs will advance more quickly to the patients we've always aspired to serve. We believe this is a good outcome for patients and our shareholders."

In clinical studies to-date, TTI-622 and TTI-621 have demonstrated activity as monotherapy in relapsed or refractory lymphoid malignancies, including Diffuse Large B-cell Lymphoma (DLBCL), Peripheral T-cell lymphoma (PTCL), Follicular Lymphoma (FL), and other lymphoid malignancies. As of July 26, 2021, Phase 1 data for TTI-622 in 30 response-evaluable patients have shown deep and durable responses in heavily pretreated patients, including two complete responses (CRs), one lasting over 114 weeks, with responses ongoing. TTI-622 and TTI-621 are currently the only known CD47-targeted molecules that have demonstrated meaningful single agent activity and CRs in multiple hematological malignancies. Thus far, adverse events (AEs) reported with TTI-622 and TTI-621 have been manageable. Related Grade 3 and 4 AEs with TTI-622 were rare and limited to transient cytopenias. In particular, the molecules demonstrate minimal red blood cell binding and few reported cases of anemia, an observed risk with other CD47-targeted approaches. Further data are expected to be shared at a forthcoming medical conference.

"We are encouraged by the early clinical data for TTI-622 and TTI-621 monotherapy for patients with heavily pretreated lymphoid malignancies and early encouraging activity for TTI-622 in patients with multiple myeloma. Just as PD-1 and PD-L1 blockers have proven to be effective immuno-therapeutics for many solid tumors, the SIRPα-CD47 interaction defines a second key immune checkpoint for which disrupting agents are expected to become another important backbone immunotherapy for multiple types of cancer, especially hematological cancers," said Chris Boshoff, MD, PhD, Chief Development Officer, Oncology, Pfizer Global Product Development. "Utilizing Pfizer's leading research and global development capabilities, we plan to accelerate the clinical development of SIRPα fusion proteins as a potential new scientific breakthrough and explore combinations within our own portfolio and with innovative next-generation medicines for hematological malignancies."

In September 2020, as part of the Pfizer Breakthrough Growth Initiative (PBGI), Pfizer invested $25 million in Trillium and Jeff Settleman, Senior Vice President and Chief Scientific Officer of Pfizer's Oncology Research & Development Group, was named to Trillium's Scientific Advisory Board. Established in June 2020, PBGI's goal is to provide funding for scientific research as well as access to Pfizer's experts to ensure the continuity of clinical programs that could be of potential strategic interest for Pfizer. Pfizer has committed to providing up to $500 million in total funding to the PBGI.

**Additional Transaction Details**

The proposed acquisition of Trillium is to be completed by way of a statutory plan of arrangement under the *Business Corporations Act* (British Columbia) and subject to customary closing conditions, including approval of 66⅔% of the votes cast by Trillium shareholders, voting together as one class, at a special meeting of Trillium and approval of 66⅔% of the votes cast by Trillium shareholders and warrant holders, voting together as one class, at a special meeting of Trillium.  Completion of the acquisition is also subject to court and regulatory approval, as well as certain other closing conditions customary for transactions of this nature.

Pfizer's financial advisors for the transaction are BofA Securities, Inc., with Ropes & Gray LLP and Norton Rose Fulbright Canada LLP acting as its legal advisors. Centerview Partners LLC served as Trillium's financial advisor, while Goodwin Procter LLP and Baker McKenzie LLP (Canada) served as its legal advisors.

**Pfizer Conference Call**

Pfizer Inc. invites Pfizer investors and the general public to view and listen to a webcast of a live conference call with investment analysts at 10:00 a.m. ET on August 23, 2021.

To view and listen to the webcast visit Pfizer's web site at www.pfizer.com/investors ordirectlyat https://pfizer.rev.vbrick.com/#/events/5f7171d1-5a93-48c1-ab0d-5d3c8ec3f168. Information on accessing and pre-registering or the webcast will be available at www.pfizer.com/investors beginning today. Participants are advised to pre-register in advance of the conference call.

You can listen to the conference call by dialing either (866) 419-2408 in the United States or Canada or (602) 563-8728 outside of the United States and Canada. The password is "PfizerOncology12." Please join the call five minutes prior to the start time to avoid operator hold times.

The transcript and webcast replay of the call will be made available on Pfizer's web site  at www.pfizer.com/investors within 24 hours after the end of the live conference call and will be accessible for at least 90 days.

**About SIRPα/CD47**

Accumulating data suggest that the SIRPα–CD47 axis is a key immune checkpoint in hematologic malignancies, similar to the PD-L1 / PD-1 checkpoint for solid tumors. CD47 is a protein that is overexpressed in numerous cancer cells, and in general, high CD47 expression correlates with more aggressive disease and poorer clinical outcomes. SIRPα is an inhibitory receptor expressed on myeloid cells that binds to CD47, preventing the immune system from destroying cancer cells. Disruption of the CD47-SIRPα interaction has been proven to elicit tumor destruction through triggering of an innate immune response.

**About Pfizer Oncology**

At Pfizer Oncology, we are committed to advancing medicines wherever we believe we can make a meaningful difference in the lives of people living with cancer. Today, we have an industry-leading portfolio of 24 approved innovative cancer medicines and biosimilars across more than 30 indications, including breast, genitourinary, colorectal, blood and lung cancers, as well as melanoma.

**About Pfizer: Breakthroughs That Change Patients' Lives**

At Pfizer, we apply science and our global resources to bring therapies to people that extend and significantly improve their lives. We strive to set the standard for quality, safety and value in the discovery, development and manufacture of health care products, including innovative medicines and vaccines. Every day, Pfizer colleagues work across developed and emerging markets to advance wellness, prevention, treatments and cures that challenge the most feared diseases of our time. Consistent with our responsibility as one of the world's premier innovative biopharmaceutical companies, we collaborate with health care providers, governments and local communities to support and expand access to reliable, affordable health care around the world. For more than 170 years, we have worked to make a difference for all who rely on us. We routinely post information that may be important to investors on our website at www.pfizer.com. In addition, to learn more, please visit us on www.pfizer.com and follow us on Twitter at @Pfizer and @Pfizer News, LinkedIn, YouTube and like us on Facebook at Facebook.com/Pfizer.

**About Trillium Therapeutics**

Trillium is an immuno-oncology company developing innovative therapies for the treatment of cancer. The company's two clinical programs, TTI-622 and TTI-621, target CD47, a "don't eat me" signal that cancer cells frequently use to evade the immune system.

****

**II.     The Proxy Omits Material Information**

24.     On September 27, 2021, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to Trillium's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for Trillium's shareholders to make an informed decision in connection with the Proposed Acquisition.

A.     <u>The Misleadingly Incomplete Financial Projections</u>

25.     The Proxy omits material information regarding the financial projections for Trillium and relied upon by Centerview in its analyses.  The Proxy provides values for non-GAAP financial metrics, including Gross Profit, Total R&D Expense, Total SG&A Expense, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics.

26.     The projections served as a primary reason for the Board to approve the Proposed Acquisition and for Centerview to find the Acquisition Consideration "fair" to Trillium shareholders. The information is plainly material and speaks squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Acquisition: Is the Acquisition Consideration more or less valuable than a full stake in the standalone company? Without the material information regarding the projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Acquisition. Thus, the omitted information is plainly material to shareholders and must be disclosed.

27.     With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then

known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by Centerview and the Board but have failed to disclose the material information regarding the projections. These omissions render the summary of Trillium's value and financial picture in the Proxy misleadingly incomplete.

        B.        <u>The Misleadingly Incomplete Summary of Centerview's Valuation Analyses</u>

        28.        The Proxy describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinions. Defendants concede the materiality of this information by including the fairness opinions and valuation analyses among the factors considered in recommending the Proposed Acquisition. Proxy at 27. However, the summary of Centerview's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Trillium shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in determining whether to vote in favor of the Proposed Acquisition. This omitted information, if disclosed, would significantly alter the total mix of information available to Trillium's shareholders.

        29.        In summarizing Centerview's *Selected Public Company Analysis*, the Proxy fails to disclose: (i) the individual multiples and metrics for the companies observed in the analysis, (ii) the inputs and assumptions underlying the reference range of Enterprise Values for Trillium, and (iii) the number of fully-diluted outstanding shares of Trillium as of August 18, 2021.

        30.        The summary of Centerview's *Selected Precedent Transaction Analysis* is misleading because it fails to disclose: (i) the operational, business and financial characteristics that Centerview considered in selecting the transactions, (ii) the individual multiples and metrics for the selected transactions, and (iii) the closing dates of the transactions.

31. The summary of Centerview's *Discounted Cash Flow Analysis* fails to disclose: (i) the inputs and assumptions underlying the discount rate ranges, (ii) Trillium's estimated future losses, (iii) Trillium's fully-diluted shares outstanding as of August 18, 2021, and (iv) the present value of the impact of the assumed equity raises.

32. The summary of Centerview's *Analyst Price Target Analysis* is deficient in that it fails to disclose: (i) the individual price targets used in the analysis, and (ii) the sources thereof.

33. The summary of Centerview's *Premiums Paid Analysis* fails to disclose: (i) the sixteen selected transactions observed, and (ii) the inputs and assumptions underlying analysis.

34. These material omissions render the summary of Centerview's valuation analyses included in the Proxy misleadingly incomplete.

35. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Acquisition, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to

section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

40. Defendants have issued the Proxy with the intention of soliciting Trillium's common shareholders' support for the Proposed Acquisition. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things: (i) financial projections for Trillium, and (ii) Centerview's valuation analyses performed in support of its fairness opinion.

41. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to Trillium's shareholders, though they could have done so without extraordinary effort.

42. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company and signatories to the Proxy, the Individual Defendants

undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Acquisition and solicit shareholder consent; indeed, the Proxy states that Centerview reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Centerview and as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Arrangement Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be misleadingly incomplete.  Indeed, the Individual Defendants were required to review the financial analyses in connection with their receipt of the fairness opinion, question Centerview as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as Trillium's officers and directors.

44. Trillium is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

45. The misrepresentations and omissions in the Proxy are material to Plaintiff, who

will be deprived of his right to make an informed decision on the Proposed Acquisition if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Trillium within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Trillium, and participation in and/or awareness of Trillium's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Trillium, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants, as a signatory to the Proxy, was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Trillium, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Board to approve the Proposed Acquisition.

50. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Arrangement Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Acquisition, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

      C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 28, 2021        **MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*